UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
WILLIE MARIE BROYLES,         )
                              )
          Plaintiff,          )
                              )
          v.                  )    Civil Action No. 04-2104 (RWR)
                              )
MICHAEL ASTRUE,               )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM OPINION

Plaintiff Willie Marie Broyles appeals the decision the Commissioner of the Social Security Administration ("SSA"),[1] denying her request for Social Security disability insurance ("SSDI") benefits for the period between January 2001 and June 4, 2002.  Broyles moves for reversal, claiming that the administrative law judge ("ALJ"), whose decision became the Commissioner's, erred by deciding that Broyles was not disabled. The Commissioner opposes and moves to affirm the final decision. Because the evidence in the record supports the ALJ's determination, the plaintiff's motion will be denied and the Commissioner's motion will be granted.

## BACKGROUND

Broyles is 58 and lives in Washington, D.C.  Pl.'s Mem. in Supp. of Mot. for Reversal ("Pl.'s Mem.") at 3.  She has a

---

[1] Secretary Michael Astrue is substituted as the defendant under Federal Rule of Civil Procedure 29(d).

-2-

college education, and worked in the past as a secretary and an administrative assistant.  However, she experienced a period of only intermittent work up until June 4, 2002, when she returned to work full time.  Id.; Administrative R. ("R.") at 249-51.

In 2000, Dr. David Ralphing conducted a psychiatric evaluation of Broyles and opined that Broyles appeared to suffer from moderately severe recurrent major depression.  R. at 271. In addition, Dr. Eugene Miknowski concluded that Broyles demonstrated a normal range of motion in all joints; that despite a 1997 diagnosis of fibromyalgia, her physical condition could significantly improve with exercise and aggressive treatment; that Broyles was capable of lifting, carrying, and pushing at least ten to 15 pounds; and that she could sit without restriction.  Id. at 264-66.  In March of 2001, Broyles' treating psychiatrist, Dr. Victoria Tankeh, filled out a mental impairment questionnaire sheet based upon her perception of Broyles. Dr. Tankeh noted that Broyles had experienced poor memory, disturbed appetite, sleep, and mood, social withdrawal, and decreased energy, and reported that she experienced panic attacks, anhedonia, feelings of guilt and worthlessness, difficulty thinking and concentrating, and general persistent anxiety.  The doctor opined that Broyles would have difficulty working a full-time job on a sustained basis due to her impairments.  Id. at 272-76.

-3-

In July of 2001, Broyles applied to the SSA for disability
insurance benefits, alleging that since January 13, 2000, she
suffered from emotional illness, depression, learning disability,
and fibromyalgia. Compl. ¶ 5; Pl.'s Mem. at 2-3. In December of
2001, a Disability Determination Services ("DDS") physician
completed a Physical Residual Functional Capacity Assessment of
Broyles, and concluded that Broyles was capable of lifting 20
pounds occasionally and 10 frequently; standing and/or walking
about six hours in an eight hour workday; sitting about six hours
in an eight hour workday; and pushing and/or pulling to an
unlimited degree. R. at 183-90. A DDS psychologist reviewed
Broyles' records and completed a Psychiatric Review Technique
form. Id. at 195-208. The DDS examiner addressed whether
Broyles' condition met the requirements for the listings at
sections 12.02, 12.04, or 12.08 of the Social Security Listing of
Impairments, 20 C.F.R. § 404, Subpart P, App. 1, which address
organic mental, affective, and personality disorders. Id. at
195. The DDS examiner found that under the "A" criteria of those
listings, while Broyles had a medically determinable impairment,
that impairment did not precisely satisfy the appropriate
diagnostic criteria. Id. at 196, 198, 202. Moreover, the
examiner found that under the "B" criteria for these listings,
Broyles had only mild restrictions of activities of daily living,
moderate difficulties in maintaining social functioning, mild

difficulties in maintaining concentration, persistence, or pace, and experienced only one or two episodes of decompensation.  Id. at 205.

The DDS psychologist also completed a Mental Residual Functional Capacity Assessment of Broyles.  R. at 191-193.  The examiner found that Broyles was moderately limited in several capacities: her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and her ability to set realistic goals or make plans independently of others.  Id. at 192.  Based on these findings, the DDS examiner opined that Broyles was still capable of engaging in "routine, and some types of complex, work at least."  Id. at 193.

In July of 2002, Dr. James Ryan conducted a vocational evaluation of Broyles, noting that Broyles obtained a bachelors degree in 1977, with majors in psychology and social work. R. 209.  Dr. Ryan noted that Broyles attended but did not complete graduate school.  Based on his review of Broyles health and educational background, Dr. Ryan opined that Broyles' physical limitations "would present no major barrier to

-5-

employment," and that she could perform jobs at the semi-skilled and skilled level.  <u>Id.</u> at 211.  However, Dr. Ryan opined that despite that evidence, Broyles' emotional status would preclude full-time employment.  <u>Id.</u>

In February 2003, an ALJ held an administrative hearing regarding Broyles' claim.  Vocational expert Kathleen Sampeck testified that an individual of Broyles' age, education, and work experience who was limited to a low-stress environment involving minimal interpersonal contacts with supervisors, coworkers, or the public, and performing simple, rote, repetitive job tasks, or detailed but not complex job tasks, would be capable of performing the jobs of non-postal mail clerk, office helper, and addresser.  R. at 260.  Sampeck stated that in the Washington, D.C. area, there were 800 mail clerk positions, 1,800 office helper positions, and 400 addresser positions, and that nationally, there were 45,000 mail clerk positions, 67,000 office helper positions, and 42,000 addresser positions.  <u>Id.</u> at 261. Sampeck testified that her opinion was consistent with the Dictionary of Occupational Titles.  <u>Id.</u>

The ALJ issued a decision on June 7, 2003, denying Broyles' claim for SSDI benefits.  R. at 14-23.  "In order to determine whether a claimant is disabled, an ALJ is required to perform a five-step evaluation."  <u>Dunham v. Astrue</u>, 603 F. Supp. 2d 13, 17

(D.D.C. 2009) (citing 20 C.F.R. §§ 404.1520, 416.920, and <u>Butler</u>

<u>v. Barnhart</u>, 353 F.3d 992, 997 (D.C. Cir. 2004)).

> At step one, the ALJ determines whether the claimant
> has been employed in substantial gainful work since the
> onset of [her] impairment.  If the claimant has
> performed substantial gainful work, [her] claim will be
> denied.  If the claimant has not performed substantial
> gainful work, the ALJ must determine at step two
> whether the claimant's impairments are medically
> severe.  If the impairments are not severe, the
> claimant is not disabled.  If the impairments are
> severe, the ALJ at step three must compare the
> claimant's impairments with those in the listing of
> impairments promulgated by the SSA.  If the claimant
> suffers from an impairment that meets the duration
> requirement and meets or equals an impairment listed in
> Appendix 1 of the regulations, the claimant is deemed
> disabled and the inquiry ends.  If no match exists, the
> ALJ must continue the evaluation.  At step four, the
> ALJ must determine if the claimant retains any residual
> functional capacity, namely, the ability to do past
> relevant work.  Finally, [at step five] if the claimant
> is unable to perform [her] past work, the burden shifts
> to the Commissioner to demonstrate that the claimant is
> able to perform other work based on a consideration of
> [her] residual functional capacity, age, education and
> past work experiences.

<u>Dunham</u>, 603 F. Supp. 2d at 13 (emphasis added).

The ALJ first noted that the medical evidence indicated that

Broyles was diagnosed with and treated for "disorders of the

back, affective disorder, anxiety related disorder, a learning

disability and fibromyalgia, which prevent[ed] her from engaging

in some basic work related activities."  R. at 15.  The ALJ

determined that Broyles' condition did not meet the definition of

an Affect Disorder:

> [T]he evidence does not demonstrate that [Broyles']
> impairments, either singly or in combination, are of a

severity to meet or equal any of the impairments set
forth in the Listing of impairments at Appendix 1 to
Subpart P of Regulations No. 4 (20 C.F.R.
§ 404.1520(d)) as required by the third step.
Specific consideration was given to Listings 1.04,
12.04, 12.05, and 12.06 A, B, and C.  The medical
evidence does not satisfy the requisite level of
severity of those or any other Listing. . . .
[Broyles'] musculoskeletal impairment does not result
in motor loss with accompanying atrophy, positive
straight leg raising, or sensory or reflex loss, or
inability to ambulate effectively.  Her mental
impairments, singly or in combination, do not result in
marked limitation in at least 2 of 4 elements of
functioning, activities of daily living, socialization,
concentration, attention, persistence or pace, or
episodes of deterioration for extended duration; nor do
they result in [Broyles] being unable to function
outside her home.  No treating, consulting, examining,
or reviewing medical source has opined that the
claimant's impairments, singly or in combination, were
equal to any listed impairment.

R. at 16.  The ALJ noted that Dr. Tankeh concluded that Broyles

"had marked slight restrictions in her activities of daily

living, marked difficulties in maintaining social functioning,

often had difficulties in maintaining concentration, persistence

and pace[.]"  Id. at 19.  However, the ALJ gave "little weight"

to the opinions of Dr. Tankeh regarding Broyles ability to work

because Dr. Tankeh's statements that Broyles was "disabled" or

"unable to work" were not medical opinions and instead were

findings to be made by the ALJ, and also because her opinions

were "neither supported by nor consistent with the preponderance

of the evidence of record."  Id. at 20.  Thus, the ALJ found that

the totality of the evidence showed that Broyles possessed the

residual functional capacity to perform the demands of light work

-8-

in a low stress work environment involving minimal interpersonal

interaction with coworkers or the public, performing simple,

rote, repetitive job tasks.  Id.  According to the ALJ,

> [Broyles'] affective and anxiety disorders and learning
> disability have resulted in a mildly decreased ability
> to perform activities of daily living; a moderately
> decreased ability to maintain social functioning; a
> moderately decreased ability to sustain attention
> concentration, persistence and pace; and a history [of]
> 1 or 2 episodes of decompensation for extended
> duration.  As a result, she is limited to a low stress
> work environment involving minimal interpersonal
> interaction with supervisors, coworkers and/or the
> public; performing simply rote repetitive tasks.

R. at 19.  The ALJ further determined that Broyles' assertions of

incapacity lacked credibility.  Id. at 20.  He concluded, based

upon vocational expert testimony at step five of the sequential

evaluation process, that Broyles was capable of performing the

occupations of non-postal mail clerk, office helper, and

addresser.  Id. at 11-23.  The Appeals Council denied Broyles'

request for review, rendering the ALJ's decision the final

decision of the Commissioner.  Broyles timely filed this action

for judicial review under 42 U.S.C. § 405(g).

Broyles has moved for reversal, arguing that the ALJ failed

to evaluate properly Broyles' impairments at step 3 of the

sequential evaluation process, that the ALJ improperly ignored

the opinion of Broyles' treating physician and erroneously relied

upon the testimony of the vocational expert, and that the ALJ

erroneously assessed Broyles' residual functional capacity.  The

-9-

Commissioner opposes Broyles' motion, and has moved for an order affirming the ALJ's decision.

### STANDARD OF REVIEW

A district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When a court reviews an SSA decision, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Id. Accordingly, the "Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." Butler, 353 F.3d at 999. In other words, "[a] district court's review of the SSA's findings of fact is limited to whether those findings are supported by substantial evidence." Dunham, 603 F. Supp. 2d at 17 (citing 42 U.S.C. § 405(g), and Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]'" id. (quoting Butler, 353 F.3d at 999 (internal quotation omitted)), and "is 'more than a mere scintilla of evidence,' but 'something less than a preponderance of the evidence[,]'" id. (quoting Ware v. Barnhart, 357 F. Supp. 2d 134, 138 (D.D.C. 2004)). When determining whether the SSA's findings

-10-

were supported by substantial evidence, the court "may not re-weigh the evidence and replace the [SSA's] judgment regarding the weight of the evidence with its own." Nicholson v. Social Security Admin., Civil Action No. 10-2010 (RWR), 2012 WL 4466853, at *1 (D.D.C. September 27, 2012) (quoting Brown v. Barnhart, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (internal quotation marks omitted)). An ALJ's decision should be upheld where the ALJ "'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" Crawford v. Barnhart, 556 F. Supp. 2d 49, 52 (D.D.C. 2008) (quoting Butler, 353 F.3d at 999).

### DISCUSSION

"To qualify for disability benefits under Title XVI (Supplemental Security Income) of the Social Security Act, . . . a claimant must establish that [she] is disabled." Jones v. Astrue, 647 F.3d 350, 352 (D.C. Cir. 2011) (citing 42 U.S.C. § 1381a). For the first four steps of the sequential evaluation process, the claimant carries the burden of proof. The listing of impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

-11-

Broyles argues that the ALJ's determination that Broyles' condition did not constitute one of the listed impairments was flawed.  According to Broyles, her answers to the Mental Impairment Questionnaire and Dr. Tankeh's notes on the questionnaire were sufficient to satisfy the criteria of the impairment listed at section 12.04 A, Affective Disorder, and the ALJ failed to evaluate the findings of Dr. Tankeh.  Pl.'s Mem. at 6.  Broyles also complains that the ALJ failed to give Dr. Tankeh's opinion sufficient weight.  Id. at 11.  Section 12.04 A states that an Affective Disorder is "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R. Part 404 Subpart P, Appendix 1, Section 12.04.  That section provides, in relevant part:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
> a. Hyperactivity; or

-12-

b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high
probability of painful consequences which are not
recognized; or
h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods
manifested by the full symptomatic picture of both
manic and depressive syndromes (and currently
characterized by either or both syndromes); AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social
functioning; or
3. Marked difficulties in maintaining concentration,
persistence, or pace; or
4. Repeated episodes of decompensation, each of
extended duration.

OR

C. Medically documented history of a chronic affective
disorder of at least 2 years' duration that has caused
more than a minimal limitation of ability to do basic
work activities, with symptoms or signs currently
attenuated by medication or psychosocial support, and
one of the following:
1. Repeated episodes of decompensation, each of
extended duration; or
2. A residual disease process that has resulted in such
marginal adjustment that even a minimal increase in
mental demands or change in the environment would be
predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to
function outside a highly supportive living
arrangement, with an indication of continued need for
such an arrangement.

20 C.F.R. Part 404 Subpart P, Appendix 1, Section 12.04 (A), (B),

(C).

-13-

Broyles' argument misses the mark.  While Dr. Tankeh did opine that Broyles met the requirements of listing 12.04, the ALJ addressed and evaluated Tankeh's opinions and determined that they were conclusory and inconsistent with the other medical evidence in the record.  An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Pinkney v. Astrue, 675 F. Supp. 2d 9, 18 (D.D.C. 2009) (internal quotation omitted).  Because the ALJ specifically addressed Tankeh's conclusory findings and explained why they contradicted the medical evidence in the record, the ALJ did not fail to meet his duty to explain.  See Grant v. Astrue, 857 F. Supp. 2d 146, 154 (D.D.C. 2012) ("That the ALJ's decision noted the contrary evidence in the record satisfies the requirement to explain the rejection of the treating physician's opinion.").

Broyles next argues that, at step five in the evaluation process, the ALJ improperly relied upon the testimony of a vocational expert ("VE").  Pl.'s Mem. at 12-13.  However, "Social Security regulations provide that, in determining whether there are jobs which exist in significant numbers in the national economy that a claimant can perform based on [her] residual functional capacity, an ALJ may consider the testimony of a vocational expert."  Turner v. Astrue, 710 F. Supp. 2d 95, 109 (D.D.C. 2010) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e); and

-14-

<u>Brown v. Barnhart</u>, 408 F. Supp. 2d 28, 33 n.5 (D.D.C. 2006) ("An
administrative law judge may base his decision on the testimony
of a vocational expert."))  "Testimony of a VE constitutes
substantial evidence for purposes of judicial review where [her]
opinion is based on consideration of all the evidence in the
record and is in response to proper hypothetical questions which
fairly set out all of claimant's impairments."  <u>Turner</u>, 710 F.
Supp. 2d at 109 (internal quotation omitted).  "A vocational
expert's testimony will be regarded as consistent with the DOT
[Dictionary of Occupational Titles] if there are one or more jobs
that both the VE and DOT agree can be performed by a claimant."
<u>Id.</u>

Broyles argues that she cannot perform the jobs listed by
Sampek (mail clerk, office helper, and addresser) and that they
exceed her mental residual functioning capacity because, in the
DOT, those three jobs require a reasoning level of 2 or 3.
Broyles asserts that the ALJ's determination of Broyles' health
inherently determined that she could not perform jobs requiring
reasoning level 2 or 3 because that reasoning level requires the
ability to carry out detailed written or oral instructions.
Pl.'s Mem. at 14.  However, all three positions carry a specific
vocational preparation scoring of 2, indicating that they are
considered unskilled positions and that it would take less than

30 days to learn them.  Such positions would be consistent with
the ALJ's findings regarding Broyles' health.

Broyles finally argues that the ALJ erroneously assessed
Broyles' residual functional capacity because he failed to
incorporate a "function-by-function" assessment of Broyles'
ability to perform the non-exertional requirements of light work
by failing to set forth a narrative discussion describing how the
evidence supported each conclusion.  Pl.'s Mem. at 18-22.
Generally, before addressing steps four and five of the five-step
sequential evaluation, an ALJ must assess the claimant's residual
functional capacity.  20 C.F.R. § 404.1520.  The residual
functional capacity determines what a person can do in a work
setting despite any impairments or limitations based on all the
relevant evidence in her case.  In conducting a residual
functional capacity analysis, an ALJ must perform an individual
or function-by-function assessment of the following exertional
capacities: "[s]itting, standing, walking, lifting, carrying,
pushing, and pulling[,]" and the following non-exertional
capacities: "postural (e.g., stooping, climbing), manipulative
(e.g., reaching, handling), visual (seeing), communicative
(hearing, speaking), and mental (e.g., understanding and
remembering instructions and responding appropriately to
supervision)."  <u>Social Security Ruling</u> 96-8p, Policy
<u>Interpretation Ruling Titles II and XVI: Assessing Residual</u>

-16-

Functional Capacity in Initial Claims, 1996 WL 374184 at *5-6
(July 2, 1996).  However, if "there is no allegation of a
physical or mental limitation or restriction of a **specific**
functional capacity, and no information in the case record that
there is such a limitation or restriction, the adjudicator must
consider the individual to have no limitation or restriction with
respect to that functional capacity."  Hartline v. Astrue, 605 F.
Supp. 2d 194, 204-05 (D.D.C. 2009) (emphasis added).  In other
words, there are some situations where "an articulation of the
function-by-function analysis is not required, particularly for
capacities for which no limitation is alleged."  Banks v. Astrue,
537 F. Supp. 2d 75, 84 (D.D.C. 2008).

    Here, the record shows that the ALJ assessed whether
plaintiff could perform light work, so long as that work was low
stress, involved minimal interpersonal interaction with
supervisors, coworkers, and the public, and consisted of simple,
rote, and repetitive job tasks.  R. at 19.  Broyles did not
specify which capacities she identified and challenged before the
ALJ for which the ALJ did not perform a function-by-function
analysis.  The ALJ addressed the exertional factors by
determining that Broyles was capable of performing all of the
exertional demands of light work, and the non-exertional factors
by determining that her alleged affective and anxiety disorders
and learning disability caused her to have a moderately decreased

-17-

ability to sustain attention concentration, persistence and pace.
Id.  The ALJ further noted that he relied upon the State agency
assessment and Miknowski's assessment to support his
determination of Broyles' residual functional capacity.  Id. at
20.  Thus, the ALJ did not fail to properly assess Broyles'
residual functional capacity.

CONCLUSION

Because the ALJ's rejection of the plaintiff's application
for benefits was supported by substantial evidence in the record,
the Commissioner's motion for affirmance will be granted, and
Broyles' motion for reversal will be denied.  An appropriate
order accompanies this memorandum opinion.

SIGNED this 18th day of December, 2012.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge